IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GWENDOLYN DIANNE WILKES, et al. )
)
        Plaintiff(s),  )
)
v. ) 1:19cv699
)
STATE OF NORTH CAROLINA )
)
        Defendant. )

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

    This case comes before the undersigned United States Magistrate Judge on Plaintiffs' Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application") (Docket Entry 1), filed in conjunction with the pro se Complaint (Docket Entry 2). For the reasons that follow, the undersigned will grant the Application for the limited purpose of recommending dismissal due to frivolousness.

    "The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting <u>Adkins v. E.I. DuPont de Nemours & Co.</u>, 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing in forma

pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous." 28 U.S.C. § 1915(e)(2)(B)(i).

Tthe United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256-57 (some internal quotation marks omitted). The Supreme Court further has identified factually frivolous complaints as ones involving "allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25,

32-33 (1992) (internal citations and quotation marks omitted).[1]  In considering such matters, this Court may "apply common sense." Nasim, 64 F.3d at 954.

Although federal courts must give pro se filings "liberal[ ] constru[ction]," Estelle v. Gamble, 429 U.S. 97, 106 (1976), "[t]he liberal construction which [courts] are obliged to afford a pro se complaint is not without bounds," Stratton v. Mecklenburg Cty. Dep't of Soc. Servs., 521 F. App'x 278, 290 (4th Cir. 2013). "Admittedly, pro se complaints represent the work of an untutored hand requiring special judicial solicitude.  Nevertheless, they may present obscure or extravagant claims defying the most concerted efforts to unravel them. . . . [J]udges are not mind readers, and the principle of liberal construction does not require them to conjure up questions never presented to them . . . ." Id. at 290-91 (internal citations and quotation marks omitted).

Plaintiffs have submitted a pro se Complaint, titled as "Petition [f]or Writ [o]f Quo Warranto" (Docket Entry 2 at 1) that sets out unclear and implausible allegations.  First, it asserts that Plaintiffs are "a 72 year old disabled woman" ("Plaintiff

---

[1] Notably, complaints presenting claims that "are essentially fictitious," including those alleging "'bizarre conspiracy theories,'" also merit dismissal under the substantiality doctrine. Newby v. Obama, 681 F. Supp. 2d 53, 56 (D.D.C. 2010) (quoting Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994)); see also O'Brien v. United States Dep't of Justice, 927 F. Supp. 382, 385 (D. Ariz. 1995) ("On their face, [the p]laintiff's allegations are so bizarre and delusional that they are wholly insubstantial and cannot invoke this Court's jurisdiction.").

-3-

Wilkes") (id. at 2), and "a non-profit Corporation registered with the N.C. Secretary of State," titled "People Improving Perpetuity aka PIP" ("Plaintiff PIP") (id.).[2]  According to the Complaint, Plaintiffs "seek[ ] justice denied by NC Courts for injuries and violations of [Plaintiff Wilkes's] civil rights [ ] and [the rights of] other citizens of North Carolina."  (Id.)  The Complaint requests "consideration for the case to be tried by the District Attorney for the U.S. Middle District of N.C. according to Quo Warranto in the name of the U.S. Department of Justice."  (Id.)

The Complaint's allegations against "[Defendant], Office of the Governor, NC DHHS, NC Courts, Legislature, and other agencies of [Defendant] - including healthcare providers under the control of [Defendant]" (id.), accuse those entities of "corrupt[ion] and fail[ure] to meet their responsibility under rule of law" (id.). As "[e]xamples of [v]iolations" (id. at 3), the Complaint lists, inter alia, failure to "[p]revent[ e]lder [a]buse, neglect, and exploitation [under] 41 USC 3058i" (id.), violation of "ADA - Olmstead" (id.), failure to utilize "[f]unds for education of professionals" (id.), "fail[ure] to regulate [m]edical [p]roviders" (id. at 4), "fail[ure] to require medical students to study [f]ederal HHS law and patient's rights" (id.), "promot[ion of] an environment in the State of NC which does not hold medical

---

[2] In the Complaint and "Exhibit A," Plaintiff Wilkes asserts that she proceeds by "[r]epresenting herself and as CEO and Founder [of Plaintiff PIP]."  (Docket Entry 2 at 53; see also Docket Entry 2-2 at 8, 52, 53, 61.)

-4-

providers accountable according to the rule of law" (id.), "fail[ure] to rewrite NCGS 122C - acknowledged by N.C. School of Government to be a 'cut and paste' chapter - difficult to comprehend" (id. at 5), "discriminat[ion] against the disabled and elderly through its administration of [p]roperty [t]ax" (id.), and "abuse[ of] the elderly and disabled by sending harassing and threatening letters requiring the filing o[f] tax returns when no taxes are due." (id.).

The Complaint includes as "[a]dditional [f]acts of [t]he [c]ase," (id. at 26), the following:

> . . . N.C. citizens are routinely denied a court hearing and legal counsel (Obstructions of Justice) in violation of state and federal law related to Involuntary Commitments - more appropriately worded - therefore, they are victims of Kidnapping and Felonious Restraint - as they are in violation of law. And there are no standard physical or psychological standards for evaluations - if they get a medical evaluation. [Plaintiff Wilkes] received no evaluation by a physician but was summarily drugged with contraindicated substances - based on false and malicious statements by the affiant – who was estranged – and had not talked to nor seen [Plaintiff] in 12-13 years. Forced upon [Plaintiff Wilkes] were medications in combination and dosages which were 'Black Box Warning' per FDA – and caused permanent and potentially fatal injuries to [Plaintiff Wilkes].
> . . . .
>
> An initial attempt to have [Plaintiff Wilkes] involuntarily committed, based on collusion and conspiracy - failed as a result of an astute medical provider. Therefore, a second attempt was made - again based on collusion, conspiracy, defamation, and a false and malicious affidavit. Due to violations of law, [Plaintiff Wilkes] was held for 12 days, chemically restrained and held in isolation, left to lie in her own waste, transported across the state line into South Carolina - without a court hearing or legal counsel in

-5-

> either jurisdiction, to a facility not approved by NC DHHS, nor authorized by the dispatching hospital personnel, nor authorized by the receiving hospital personnel, to a facility also not approved by Joint Commissions, where no record of prior treatment - nor list of previous medications given - and where [Plaintiff Wilkes] was required to give up her 2nd amendment rights - or continue to be held.  [Plaintiff Wilkes] was isolated in all cases - and was not allowed personal items of clothing, toiletries, access to her cell phone and phone numbers, nor cash, nor a place to store personal items - all requirement of law.  The facility was under construction and black mold and dust were constant irritants.  She was refused proper treatment of symptoms of a U.T.I.'s when symptoms appeared.  She was subsequently tested positive for a CRE - klebsiella (a resistant and potentially fatal bacteria - and E. coli.  Healthcare Providers and N.C. Public Health colluded to refuse testing of Candida Auris - a likewise potentially fatal pathogen.  Refusing testing recommended by N.C. Public Health, Microbiology Lab Supervisor JoAnn Touchberry - with instruction/collusion from the N.C. Public Health Director and N.C. Public Epidemiologist - to cover up failures to meet CMS requirements/ certification - at the expense of [Plaintiff Wilkes]'s health and well[-]being . . . .

(Id. (numbers omitted).)  The Complaint's "Prayer for Relief" (id. at 45-53), requests a multitude of non-sensical relief, largely injunctive in form (see id.).

The first of two attachments accompanying the Complaint, a "Cover Letter" (Docket Entry 2-1 at 1-4), states that Plaintiff Wilkes previously "contacted [the Clerk's Office in the Middle District of North Carolina] related to the lawsuit in the U.S. Justice vs. Duke Healthcare related to Clinical Trials/Public Funding - fraud and abuse" (id. at 1).  The remaining portions of the letter present nearly-identical allegations to those in the Complaint against Defendant, Defendant's agencies, and medical

-6-

providers.  (See id. at 1-4.)  The Complaint's second attachment, "Exhibit A" (Docket Entry 2-2 at 1-290), titled a "Manifesto of [Plaintiff PIP]" (id. at 1), asserts the following:

> [Plaintiff PIP], a Non-Profit Corporation, Registered with the NC Secretary of State hereby declare that all citizens - be they disabled, elderly, poor, (regardless of their personal circumstances) have equal rights - and that in the State of North Carolina both federal and state laws are being broken by the State and Agencies of that state and by Medicare and Medicaid Providers, thereby violating citizens' rights . . . .

(Id.)  The "Manifesto" includes similar allegations to those set forth in the Complaint and, in addition, incorporates numerous documents from Plaintiff Wilkes's communications with various doctors and other documents which appear to come directly from federal and state government agency sources, such as the North Carolina Department of Health and Human Services (id. at 19-31) and the Centers for Disease Control and Prevention (id. at 32-43). Lastly, the "Manifesto" incorporates an additional Complaint, totaling 215 pages, labeled as "working copy."  (Id. at 72-290.)

Plaintiffs also have filed a "Motion for Ex Parte Order of Protection" (Docket Entry 4 at 1-28), which relates similar allegations against Defendant and various agencies and, for the first time, attempts to include the State of South Carolina as a defendant (see id. at 1).³  Finally, Plaintiffs filed a "Motion for

---

³ The State of South Carolina does not qualify as a defendant. See Fed. R. Civ. P. 10(a) (requiring a complaint's caption to "name all the parties"); see also Doe v. North State Aviation, LLC, No. 1:17cv346, 2017 WL 1900290, at *1 (M.D.N.C. May 9, 2017) (unpublished) (refusing to address party not identified in

-7-

Writ of Certiorari" (Docket Entry 5 at 1), in which they "seek[ ] a Writ of Certiorari having been denied justice in the states of North Carolina and South Carolina" (id.).

The Court should dismiss this action as frivolous. As an initial matter, the Complaint asserts that Plaintiff Wilkes appears "[r]epresenting herself and as CEO and Founder [of Plaintiff PIP]" (Docket 2 at 53), and that, in those dual capacities, she "seek[s] justice denied by NC Courts for injuries and violations of her civil rights [ ] and other citizens of North Carolina" (id. at 2). However, Plaintiffs' pro se status precludes her from proceeding in such a representative fashion. "[A] pro se plaintiff may litigate only h[er] own personal claims." Grant-Davis v. Supreme Ct. of South Carolina, 2:15cv4019, 2015 WL 13732644, at *7 (D.S.C. Dec. 7, 2015) (unpublished) (citing Myers v. Loudon Cty. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005)).[4] Further, Plaintiff Wilkes cannot represent Plaintiff PIP, a "non-profit Corporation registered with the N.C. Secretary of State." (Docket Entry 2 at 2.) Specifically, "[i]t has been the law for the better part of two

---

caption). In any event, any claim against the State of South Carolina obviously fails for the same reasons as do the claims against Defendant State of North Carolina.

[4] Relatedly, on the Civil Cover Sheet in this matter, Plaintiff checked the box indicating that "this is a class action under Rule 23" of the Federal Rules of Civil Procedure. (Docket Entry 3 at 1.) The Fourth Circuit, however, has previously held that it "consider[s] the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others." Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975).

-8-

centuries . . . that a corporation may appear in federal courts only through licensed counsel."  Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993); see also Gilley v. Shoffner, 345 F. Supp. 2d 563, 566 (M.D.N.C. 2004) (Bullock, J.) (dismissing complaint brought by pro se plaintiff and his limited liability company, but "not signed by an attorney and [thus] constitut[ing] a pro se pleading" (italics omitted)).

Next, the Complaint "seek[s] consideration for a Petition of Writ of Quo Warranto."  (Docket Entry 2 at 3.)  By way of definition, "quo warranto is the prerogative writ by which the Government can call upon any person to show by what warrant he holds public office or exercises a public franchise" and, as such, "a private individual has no standing to institute such proceeding."  Awwad v. United States, No. 2:14cr163, 2016 WL 9240612, at *1 (E.D. Va. Aug. 12, 2016) (unpublished) (citing Newman v. United States ex rel. Frizzell, 238 U.S. 537, 545 (1915) (italics and quotation marks omitted)).  "Thus P[laintiff Wilkes], a private individual, lacks standing to assert a claim for a writ of quo warranto."  Id. (italics omitted).

Further, the Complaint demands damages from the State of North Carolina, relief foreclosed by the Eleventh Amendment.  See Edelman v. Jordan, 415 U.S. 651, 663 (1974) (holding that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State").  Likewise,

-9-

"[a]bsent waiver by the State or a valid congressional override, the Eleventh Amendment bars an action for damages in federal court against state agencies and other government entities that are characterized as 'arm[s] of the State.'" Gibson v. North Carolina, Civ. No. 5:16-CT-3320-D, 2017 WL 9478521, at *3 (E.D.N.C. Aug. 9, 2017) (unpublished), (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 430 (1997)); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989) (recognizing that "a State is not a person within the meaning of [42 U.S.C.] § 1983"). The Complaint lacks allegations sufficient to avoid the Eleventh Amendment bar.

Turning to the specific claims against Defendant, the Complaint invokes the Elder Abuse Prevention Act (the "EAPA"), 42 U.S.C. § 3058i, which "is aimed at prevention of elder abuse, neglect, and exploitation," by allocating funds "'to develop, strengthen, and carry out programs for the prevention, detection, assessment, and treatment of, intervention in, investigation of, and response to elder abuse, neglect, and exploitation,'" Taleff v. Taleff, No. 18CV1294, 2018 WL 6418541, at *2 (S.D. Ca. Dec. 6, 2018) (unpublished) (quoting 42 U.S.C. § 3058i(b)). (See Docket Entry 2 at 3, 12, 20, 23, 30, 43, 47.) A careful review of that "statutory scheme" indicates that "any right of enforcement is left to the state, not to individuals." Sienze v. Madera Cty. Sheriff's Office, No. 1:17cv736, 2017 WL 2423672, at *6 (E.D. Ca. June 5,

2017) (unpublished) (finding that "Congress did not intend to create a private right of action under [S]ection 3058i").

As a final matter, to the extent the Court can discern any other claims, they plainly appear "fanciful, fantastic, and delusional," Denton, 504 U.S. at 33 (internal citations and quotation marks omitted). Even liberally construed, the Complaint presents "clearly fictitious factual claims," Stratton, 521 F. App'x at 289, best described as "bizarre and delusional," O'Brien v. United States Dep't of Justice, 927 F. Supp. 382, 385 (D. Ariz. 1995), and "ris[ing] to the level of the irrational [and] the wholly incredible," Denton, 504 U.S. at 33.

**IT IS THEREFORE ORDERED** that Plaintiffs' Application (Docket Entry 1) is **GRANTED** for the sole purpose of entering this Order and Recommendation.

**IT IS FURTHER ORDERED** the Plaintiffs' Motions (Docket Entries 4, 5) are **DENIED AS MOOT.**

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

November 19, 2019

-11-

Case 1:19-cv-00699-LCB-LPA   Document 6   Filed 11/19/19   Page 11 of 11